UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES H. BARRETT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-486-LJM-JMS |
| | ) | |
| CARL W. GROW, GREG B. STEVENS, | ) | |
| and THE COLUMBIA FIRST GROUP, | ) | |
| LTD., | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO DISMISS AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's, James H. Barrett ("Barrett"), Motion to Dismiss, Strike or Stay Counterclaims; and Defendants', Carl W. Grow ("Grow"), Greg B. Stevens ("Stevens"), and the Columbia First Group ("Columbia") (all defendants, collectively, "Defendants"), Motion for Partial Summary Judgment. In his Second Amended Complaint, Barrett alleges that Defendants owe contribution to payments made by Barrett under the terms of his settlement with Union Planter's Bank ("UPB") in satisfaction of Barrett's guarantees in the sum of $600,000.00. In their first two counterclaims, Defendants seek damages that result from Barrett's breach of fiduciary duties and unauthorized conversion of property. In their third counterclaim, Defendants seek specific performance for Barrett's failure to complete a merger.

Barrett moves the Court to dismiss Defendants' first three counterclaims (the "Counterclaims") because, among other reasons, the Counterclaims assert claims specifically addressed by an Indiana state court judgment. Defendants seek partial summary judgment on two grounds: (1) because Barrett's claim should be barred by the doctrine of unclean hands, and (2) because even if Barrett's claim should not be barred, they are entitled to a setoff prior to any damage

award. The Court has fully considered the parties' arguments and, for the following reasons, Plaintiff's Motion to Dismiss is **GRANTED** and Defendants' Motion for Summary Judgment is **GRANTED.**

## I. BACKGROUND

Barrett and each of the Defendants were members of Arvinyl Metal Finishing Group, LLC ("AMFG"), an Indiana limited liability company. Second Am. Compl. at ¶ 4. AMFG was formed in July 1999. Doc. No. 77-2, Defs.' Ex. A, Findings of Fact, Concl. of Law, & J. at ¶ 6. Barrett was President and Director of AMFG from its formation until July 31, 2001. *Id.* Barrett is also the majority holder of Arvinyl Metal Laminates Corporation ("AML"), a California corporation that is a part owner of AMFG. *Id.*

On or about March 1, 2000, and September 1, 2000, for value received, AMFG became indebted to UPB upon execution of a promissory note identified as a "Business Credit Note" for $1,500,000.00 and a "Credit Note" for $150,000.00. Second Am. Compl. at ¶ 5; Pl.'s Exs. N & O. In order for AMFG to obtain these loans, Stevens and Fred M. Barrett executed and delivered limited continuing guaranties of the indebtedness, and Barrett and Grow executed and delivered unlimited continuing guaranties. *Id.* at ¶ 6; Pl.'s Exs. P, Q, R, & S.

AMFG filed a petition for Chapter 11 bankruptcy in May 2001, which was later converted to a Chapter 7 bankruptcy in December 2001. Defs.' Reply Br. at ¶ 8. In November 2001, UPB filed a complaint in Marion County Superior Court for collection of the notes and guaranties of Barrett and Defendants. Second Am. Compl. at ¶ 7. On July 2, 2002, Barrett, Fred Barrett, and AML entered into a settlement agreement with UPB in satisfaction of all guarantees up to the sum of

$600,000.00. *Id.* at ¶ 8; Pl.'s Ex. T.  Barrett paid the $600,000.00 to UPB. *Id.* at ¶ 9. Defendants also entered into an agreement with UPB whereby they agreed to pay UPB a total of $190,000.00 for release of their liability. *Id.* at ¶ 10; Pl.'s Ex. K.  Notwithstanding their settlement agreement, Defendants were released from liability by UPB after paying only $70,000.00.  Barrett Aff. at ¶ 13.

In February 2002, Defendants were among the plaintiffs in an action in which AMFG was the derivative defendant and Barrett was the defendant.  Doc. No. 77-2, Defs.' Ex. A.

On May 2, 2002, the Bankruptcy Court entered an "Order of Abandonment" abandoning the assets of AMFG.  Doc. No. 20-4, Order of Abandonment.  This order specifically referenced the pending state court action against Barrett and AML, and stated that the Trustee thereby abandoned its right to the property (i.e. the judgment), pending the rights of any secured creditors.  *Id.*

On May 28, 2003, Marion County Superior Court No.7 issued its Findings of Fact, Conclusion of Law, and Judgment ("Judgment"), in the state court action against Barrett and AML, in which it concluded, as a matter of law, that Barrett breached his fiduciary duty to AMFG.  Doc. 77-2, Defs.' Ex. A. at ¶ 8.  Specifically, the Court concluded that Barrett transferred equipment and inventory from AMFG without authorization, credit or payment; failed to protect confidential proprietary information of AMFG by transferring the equipment and inventory from AMFG; and transferred sales from AMFG without authorization, credit, or payment.  *Id.*  Further, the Court concluded that AML failed to complete a Merger of Assets with AMFG. *Id.* at ¶ 12.  On November 4, 2005, the court issued a judgment on behalf of the derivative defendant, AMFG, against Barrett and AML for $1,044,665.00 as a result of those findings and conclusions.  Doc. No. 77-4, Defs.' Ex. C.  The Indiana Court of Appeals affirmed the finding that Barrett breached his fiduciary duty to AMFG.  Doc. No. 77-3, Defs.' Ex. B. at 16-18.

3

In response to Barrett's claim that the losses of the plaintiffs in his state case were not shown to be attributable to him, the Indiana Court of Appeals stated that "the [lower] court explicitly [] found in its summary judgment order [that the losses were attributable to Barrett], and Barrett does not appear to challenge those findings on appeal." *Id.* at 17. In support of this statement, the Court of Appeals cited the plaintiffs' numerous explicit citations in their complaint that, as a direct result of Barrett's breaches, the plaintiffs were unable to meet their obligations and were forced into bankruptcy. *Id.* The Court of Appeals also noted that these allegations were incorporated into the motion for summary judgment that the lower court granted, and further discussed testimony from the damages hearing in which a witness stated that Barrett's breach of fiduciary duty caused damages "because of the demise of the company, everyone that was involved with the company . . . lost their investment because of the breach." *Id.* at 18. The Indiana Supreme Court refused to hear Barrett's appeal of the Court of Appeals' decision. Doc. No. 91, Def.'s Reply Br. at 7.

After Judgment was entered, Barrett and AML paid $1,100,000.00 of the Judgment to the Trustee. Doc. No. 82-2, Pl's Ex. A. at ¶ 2. Barrett also paid the outstanding interest owed on the Judgment to the Trustee. *Id.*

Defendants and others sued the Chapter 7 Trustee of AMFG and others in a bankruptcy adversary proceeding in an effort to establish ownership of the Judgment against Barrett. Doc. 82-6, Pl's Ex. B. at ¶¶ 5-6. On May 23, 2008, Defendants and others agreed to a proposed settlement of the adversary proceeding with the Trustee under which the Trustee agreed to pay them $405,000.00 in full satisfaction of the claims of the members of the Thomas Group, (which includes Defendants) against Barrett. *Id.* at ¶ 14.

4

## II. <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

### A. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See*

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

**B. MERITS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants seek partial summary judgment on two grounds: (1) that Barrett has unclean hands and (2) that, alternatively, Defendants are entitled to an offset against Barrett's contribution claim. In response, Barrett challenges these assertions and further argues that the motion for partial summary judgment fails to meet the requirements of Local Rule 56.1. The Court addresses the

sufficiency of Defendants' Motion for Partial Summary Judgment before moving to the merits of the Motion.

### 1. Rule 56.1

Defendants' Motion for Partial Summary Judgment does not include a "section or Statement of Material Facts Not in Dispute containing the facts potentially determinative of the motion to which the moving party contends there is no genuine issue," as required by Local Rule 56.1. Barrett argues that this Court should use its discretion to deny Defendants' Motion as a result of this omission.

In their reply to the Barrett's argument, Defendants admit that they failed to set forth a statement of undisputed material facts. With apologies to the Court and Barrett, Defendants provided a statement of undisputed material facts in their reply brief. They also argued that while their original Motion for Partial Summary Judgment failed to contain many citations to the record, the record itself is replete with documents from the state court actions that form the basis for the dispute.

District courts are entitled to expect strict compliance with local rules. *See Cady v. Sheahan*, 467 F. 3d 1057, 1061 (7th Cir. 2006). It remains within the discretion of the Court to deny a motion or to strike a pleading as non-conforming. *See id.* In the instant case, although Barrett's response to Defendants' Motion is less precise than it could be, Barrett was able to adequately respond to Defendants' Motion. Moreover, Defendants provide the missing citations to the record and a statement of undisputed material facts in reply, along with an apology to Barrett and the Court. The Court concludes that although Defendants did not properly follow Local Rule 56.1, this error does

not warrant a denial of the Motion, because Barrett was not prejudiced by the omission and Defendants corrected their error in reply such that the Court can evaluate the Motion on its merits.

### 2. Application of the Doctrine of Unclean Hands to Barrett's Contribution Claim

Defendants' Motion for Partial Summary Judgment asks the Court to bar Barrett's claim for contribution based on the doctrine of unclean hands. Specifically, Defendants allege that the state court Judgment finding that Barrett breached his fiduciary duty to AMFG precludes Barrett from seeking contribution under his settlement with UPB. Defendants argue that AMFG went bankrupt because of Barrett's breach of fiduciary duty and, consequently, the parties were sued by UPB for payment of the guarantees. Therefore, since Barrett caused the bankruptcy through his own intentional wrongdoing, he should be barred from seeking contribution from Defendants for his payments to UPB.

The doctrine of unclean hands "applies 'to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Packers Trading Co. v. Commodity Futures Trading Comm'n.*, 972 F.2d 144, 148 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). The doctrine prohibits a wrongdoer from enjoying the fruits of his transgression that in some measure affect the equitable relations between the parties regarding a claim brought before the Court. *See id.* at 148-49; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Courts are "'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion'" when applying the doctrine. *Packers Trading*, 972 F.2d at 149 (quoting *Precision*, 324 U.S. at 815 (further citation omitted)). Misconduct that invokes the doctrine does not

even need to have been "'of such a nature as to be punishable as a crime or as to justify legal proceedings of any character.'" *Id.* (quoting *Precision*, 324 U.S. at 815).

Under Indiana law, "'unclean hands' is an equitable doctrine which means that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court." *Care Ctrs., Inc. v. Sullivan*, 701 N.E.2d 1234, 1242 (Ind. Ct. App. 1998) (quoting *Foursquare Tabernacle Church of God in Christ v. Dep't of Metro. Dev. of the Consol. City of Indianapolis*, 630 N.E.2d 1381, 1385 (Ind. Ct. App. 1994). The doctrine of unclean hands is not favored "and must be applied with reluctance and scrutiny." *Wedgewood Ass'n, Inc. v. Nash*, 781 N.E.2d 1172 (Ind. Ct. App. 2003) (citing *Shriner v. Sheehan*, 773 N.E.2d 833, 847-48 (Ind. Ct. App. 2002)). The doctrine "is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 601 (7th Cir. 1985) (citing *Shondel v. McDermott*, 775 F.2d 859, 867-69 (7th Cir. 1985), *Polk Bros., Inc. v. Forest City Enter., Inc.*, 776 F.2d 185, 193 (7th Cir. 1985)).

The elements of a claim for unclean hands have not been specifically enumerated by Indiana courts, but a review of cases suggests that in order for Defendants to successfully assert the doctrine, they must at least demonstrate three things: (1) Barrett's misconduct was intentional; (2) Barrett's wrongdoing concerned Defendants and has an immediate and necessary relation to the matter in litigation; and (3) Defendants were injured by Barrett's conduct. *See id.* (citing *Keller v. Ind. Dep't of State Revenue*, 530 N.E.2d 787, 788 (Ind. Tax Ct. 1988); *Powell v. Mobile Cab & Baggage Co.*, 83 So. 2d 191 (Ala. 1955)). The immediate and necessary requirement has been described as follows:

> What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant. . . . [W]e should not by this doctrine create a rule comparable to that by which a careless motorist would be "able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home."

*Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963) (citation omitted).

The Court concludes that Barrett's claim should be barred by the doctrine of unclean hands. There is no material question of fact that the first element of the doctrine is met in this case. The Judgment establishes that Barrett breached his fiduciary duty to AMFG, which is an intentional tort.

In addition, there is no material question of fact that the second element is met. Barrett's wrongdoing concerned Defendants, because they were shareholders of AMFG and parties to the state court action in which damages were awarded for Barrett's breach of fiduciary duty. The degree to which Barrett's wrongdoing is related to the matter at hand is the most contentious issue in the analysis of the unclean hands defense. Barrett's breach harmed AMFG. Testimony cited in the Indiana Court of Appeals opinion states that Barrett's breaches caused many of the company's investors to lose their investments in the company. Doc. No. 77-3, Defs.' Ex. B. at 18. Furthermore, as the Indiana Court of Appeals noted, the Judgment incorporated allegations that Barrett caused damages to the company as a result of his breach of fiduciary duty, which means that the Judgment definitively determined that Barrett's breaches resulted in damages to AMFG.

It is true, as Barrett notes, that the Judgment did not explicitly state that Barrett "caused" the bankruptcy of AMFG. However, this does not mean that he has clean hands in regard to the contribution claim. Barrett seeks contribution for payments on notes that he and Defendants guaranteed. These notes became due when UPB sued to recover its guarantees. If AMFG had not become bankrupt, there would be no need for UPB to sue, and as noted above, the bankruptcy was

at least in part, if not in full, caused by Barrett's actions. Thus, regardless of whether Barrett solely caused the bankruptcy of AMFG or only contributed to it, his hands were dirtied when he acquired the right to seek contribution on the notes. These facts are established by the Judgment and the Indiana Court of Appeals decision that affirmed the findings of the trial court. As a result, Barrett's contribution claim is not distinct from his breach of fiduciary duty. The Court cannot allow Barrett to seek contribution as a way to offset damages he suffered when Barrett himself played a significant role in causing those damages in the first place.

Finally, there is no material question of fact on the third element of the unclean hands doctrine. The Judgment establishes that Defendants were injured by Barrett's conduct. The Judgment awarded damages to AMFG through its status as a derivative defendant for Barrett's breaches of fiduciary duty. Defendants, as shareholders, were harmed by the actions of Barrett in that his breaches damaged AMFG, the corporation in which the Defendants had invested. Defendants' settlement with the Trustee in which they obtained some of the proceeds awarded to AMFG further evidences this injury. Defendants suffered further harm because they had to pay UPB $70,000.00 in satisfaction of guarantees after AMFG declared bankruptcy.

For these reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment that the doctrine of unclean hands should bar Barrett's claim for contribution.

### III.  PLAINTIFF'S MOTION TO DISMISS

#### A.  STANDARD

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court. *See Licari v. City of Chicago*,

298 F.3d 666, 666 (7th Cir. 2002). In Indiana, "[t]he doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute." *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005) (citing *In Re Adoption of Baby W.*, 796 N.E. 2d 364, 373 (Ind. Ct. App. 2003)). Indiana courts have divided the doctrine into two parts: claim preclusion and issue preclusion. *Id.* Claim preclusion "applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between th[e] parties and their privies." *Id.* Issue preclusion "bars the subsequent relitigation of the same fact or same issue between the same parties or their privies where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Id.*

### B. MERITS OF PLAINTIFF'S MOTION TO DISMISS[1]

Plaintiff has moved the Court to dismiss the Counterclaims. The Court notes the similarity in the facts underlying the Counterclaims and the findings and conclusions of the state court. The state court concluded that Barrett and AML breached their fiduciary duty because, among other reasons, Barrett transferred equipment, inventory, confidential information and sales to his wholly owned company without authority and AML failed to complete the merger between itself and AMFG. Doc. 77-2, Defs.' Ex. A. at ¶¶ 8, 12. In Defendants second and third Counterclaims, Defendants seek damages or specific performance against Barrett for the exact same reasons. Doc. 76, Defs.' Counterclaims at ¶¶ 54-65. Moreover, in Defendants' first Counterclaim, Defendants seek relief in the amount of $900,774.84, an amount taken directly from the state court's findings of fact

---

[1] In addressing Plaintiff's Motion to Dismiss, the Court will not consider Plaintiff's Brief in Reply because it was untimely filed. S.D. Ind. L.R. 7.1(b).

with respect to Barrett's liability for breach of fiduciary duty. Doc. No. 76, Defs.' Counterclaims at ¶¶ 52-53; Doc. 77-2, Defs.' Ex. A. at ¶¶ 6-7.

The Defendants' essentially seek damages for the exact same claims with which the state court dealt in its Judgment. The state court entered judgment in the amount of $1,044,665.00 to AMGF. Doc. No. 77-4, Defs.' Ex. C. Barrett paid the Trustee $1.1 million, as well as the outstanding interest owed on the judgment. Doc. No. 82-2, Pl.'s Ex. A. at ¶ 2. Defendants asserted claims against the Trustee to recover their share of the judgment against Barrett. Doc. 82-7, Pl's Ex. B. at ¶¶ 5-6. After negotiations, the Trustee and the Defendants entered into a proposed settlement agreement in which the Trustee agreed to pay Defendants $405,000.00. *Id.* at ¶ 14. Therefore, not only has the state court completely considered and entered judgment upon the exact claims brought in the Counterclaims, the Defendants have already sought, and entered into an agreement to receive, compensation for those claims.

Defendants' primary defense to Plaintiff's *res judicata* argument is that they were not given the opportunity to respond to a claim for contribution. However, the Court dismissed Plaintiff's claims for contribution above and Defendants argument became moot. The Court concludes that the doctrine of *res judicata* bars Defendants' Counterclaims. Plaintiff's Motion to Dismiss is **GRANTED**.

Alternatively, the Court concludes that the Counterclaims constitute nothing more than claims for setoff against Barrett. In each of the Counterclaims, Defendants specifically incorporate paragraphs thirty-six through forty-two of Defendants Counterclaims. Doc. 76, Defs.' Counterclaims at ¶¶ 36-42, 52, 54, 61. These paragraphs explicitly ask for a setoff. *Id.* The Court concluded above that the doctrine of unclean hands barred Barrett's claims for contribution. Without a valid claim

13

against Defendants by Barrett, Defendants have no need to assert claims for setoff. Accordingly, Barrett's Motion to Dismiss is **GRANTED**.

As a result of this order, the Court notes that the only remaining claim is Count IV of Defendants' Counterclaim for "Frivolous Litigation and Abuse of Process." This counterclaim is not the subject of either of the motions at issue in this Order and, as such, the Court will not address the merits of that claim.

### IV. CONCLUSION

For the reasons stated herein, Defendants', Grow, Stevens, and Columbia, Motion for Partial Summary Judgment is **GRANTED**. Plaintiff's, James Barrett, claim for contribution is hereby **DISMISSED WITH PREJUDICE**. Plaintiff's Motion to Dismiss, Strike or Stay Counterclaims is **GRANTED**. Counts I, II, and III of Defendants' Counterclaims are hereby **DISMISSED WITH PREJUDICE**. Only Count IV of Defendants' Counterclaims remains pending.

IT IS SO ORDERED this 13th day of November, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

J. Bradley Schooley
HOSTETLER AND KOWALIK PC
jbs@hostetler-kowalik.com

Carl W. Grow
CARL W. GROW
carl@labratsolutions.com

Jeffrey Alan Hunt
MCCROSSON & ASSOCIATES
jhunt@mccrossonlaw.com

Dennis Francis McCrosson III
MCCROSSON & ASSOCIATES
dmccross@mccrossonlaw.com

Michael Eugene Simmons
HUME SMITH GEDDES GREEN & SIMMONS
msimmons@humesmith.com

Joseph A. Thomas
THOMAS SZOSTAK THOMAS & NUGENT
jatjoethomas@gmail.com